UNITED STATES DISTRICT COURT
EASTER DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **ASHRAF MUSTAFA**,<br><br>Plaintiff,<br><br>vs.<br><br>**FORD MOTOR COMPANY**,<br><br>Defendant. | **2:22-cv-11902-TGB-APP**<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (ECF NO. 10)** |

Ashraf Mustafa worked at Ford Motor Company from 2014 until he was fired for poor performance in 2021. He has sued his former employer under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., asserting that he experienced discrimination because of his race, national origin, and religion, and that he was retaliated against for reporting it.

Ford has moved to dismiss Mustafa's complaint. ECF No. 10. For the reasons explained below, Ford's motion will be **GRANTED**.

## I.  BACKGROUND

Mustafa is Muslim and of Middle Eastern origin. He was hired by Ford as a manufacturing engineer in 2014. ECF No. 1, PageID.2. According to his complaint, he excelled at his work and consistently received high ratings on annual performance reviews. *Id.* at PageID.3.

But trouble began in 2019, when Mustafa was assigned to a team at an assembly plant near Kansas City, Missouri to perform manufacturing engineering work for the instrument panel for the Ford

1

F-150 pick-up truck. *Id.* In this role, he reported to three individuals: Daniel Schluentz, Gordon Richei, and Victoria Wilson. *Id.* at PageID.2–3. According to Mustafa, his duties often overlapped with the work of engineers assigned to other subsystems. *Id.* at PageID.4.

At the Kansas City plant, Mustafa began receiving "extremely low" performance evaluations and "multiple disciplines" for alleged poor performance. *Id.* at PageID.3. When he was assigned to temporary outside projects, however, he again received praise for excellent work and problem-solving abilities. *Id.*

In May 2020, Mustafa was reprimanded by Richei for coming to work in shorts. *Id.* According to Mustafa, his white co-workers were never reprimanded for coming to work in similar attire. *Id.* Mustafa was so upset over the incident that he told one of his co-workers about it. *Id.* When that co-worker mentioned it to the rest of the team, the Complaint alleges that the co-worker was "almost immediately fired … from his position with Ford." *Id.* at PageID.3-4.

Then, in July, one of the engineers on Mustafa's team quit, and Mustafa received that engineer's duties on top of his old ones. *Id.* at PageID.4. Mustafa says that he had always agreed to take on extra work, including that of engineers assigned to other subsystems, but it soon became clear that he needed assistance because of the physical distance between various production lines at the plant. *Id.* at PageID.5.

2

Mustafa asked Richei for help. *Id*. That October, upper management sent an engineer to the plant to assist Mustafa. *Id*. When that new engineer arrived, however, Richei called a meeting and announced that the engineer would be assigned to assist someone else. *Id*. When somebody interrupted to remind Richei that the engineer had been sent to the plant specifically to assist Mustafa, Richei responded that they would "talk about it later." *Id*.

Mustafa says that, at this point, he realized that he was being set up to fail: he was being assigned more work than was physically possible to complete. *Id*. at PageID.6. Around this time, he also suffered an injury on the job. *Id*. So, on October 9, 2020, he filed a human-resources complaint against his supervisors for discrimination and harassment. *Id*.

It was then that the alleged retaliation began. Shortly after Mustafa lodged his complaint, Richei accused him of falsifying his timecard. *Id*. Human resources investigated and found no merit in the accusation. *Id*. In December, Mustafa received another negative performance review, stating that he performed poorly and would not have met his deliverables requirement but for the help of his co-workers. *Id*.

In January 2021, Mustafa was placed on medical leave for his injury from October. *Id*. He was not cleared to return to work until mid-July. *Id*. at PageID.7. When he returned to work, he received an invitation to meet with Wilson and Schluentz and, at the meeting on July 22, he was fired. *Id*. The stated reason for his termination was "poor

3

performance," but Mustafa believes he was deliberately sabotaged and fired because of his race, ethnic origin, and religion and because of his human-resources complaint. *Id.*

Several months later, on May 17, 2022, Mustafa filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC). *Id.* at, PageID.2. The EEOC issued a Dismissal and Notice of Rights a day later. *Id.* Mustafa then filed the complaint in this case, raising claims of discrimination and retaliation.

Ford now moves to dismiss the complaint, contending that most of Mustafa's claims are time-barred and that, in any event, his complaint fails to state a claim. Fed. R. Civ. P. 12(b)(6).

## II. LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(6) tests whether a complaint has adequately stated a claim for relief. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In evaluating whether a plaintiff has set forth a "plausible" claim, the Court accepts well-pleaded factual allegations as true. *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). "[M]ere conclusions," however, "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at

664. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

### III. DISCUSSION

#### A. Administrative Exhaustion

Because Mustafa did not file a charge with the EEOC until May 17, 2022, two hundred ninety-nine days after his termination, Ford argues that his claims are untimely to the extent they are based on any conduct preceding his termination. ECF No. 10, PageID.41-44.

An employee raising a Title VII claim must exhaust his administrative remedies by filing an EEOC charge within a certain time period after the allegedly wrongful act. *See* 42 U.S.C. § 2000e-5(e)(1). In states like Michigan, where the EEOC has entered into a work-sharing agreement with the Michigan Department of Civil Rights, an employee has 300 days following the acts complained of to file an EEOC charge. *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 828 (6th Cir. 2019).

Mustafa appears to acknowledge that only his termination falls within the 300-day time period preceding his EEOC charge.[1] ECF No. 13,

---

[1] The Court notes that Mustafa does not detail what actions formed the basis for his EEOC charge. *See Hollimon v. Shelby Cnty. Gov't*, 325 F. App'x 406, 410-11 (6th Cir. 2009) (to satisfy the exhaustion requirement, "case law requires the claimant to show (1) that the Title VII claims were raised directly in her EEOC charge or (2) that the claims included in the EEOC charge would prompt the agency to uncover the other claims during an investigation reasonably expected to grow out of the charge of discrimination" (internal quotations omitted)).

5

PageID.71. But he argues that Ford created a harassing work environment over a prolonged period, so the "continuing violations" doctrine applies to save his claims. *Id.* at PageID.72-73.

The "continuing violations" doctrine is an equitable doctrine which tolls the 300-day EEOC filing period, allowing a plaintiff to raise discrimination claims based on acts outside the filing period. *Austion v. City of Clarksville*, 244 F. App'x 639, 647 (6th Cir. 2007). It applies where there is a "longstanding and demonstrable policy or discrimination," *id.* (quoting *Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003)), or where a plaintiff is raising a hostile work environment claim—but not to "discrete discriminatory acts" like termination or failure to promote. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).

Mustafa does not allege any facts plausibly suggesting that Ford had longstanding or demonstrable policy of discrimination. *See Austion*, 244 F. App'x at 647 (such a policy exists when "employer's standing operating procedure included intentional discrimination against the class of which plaintiff was a member" (internal quotations omitted)). Nor has he alleged any frequent, long-lasting, and severe incidents that could form the basis of a hostile work environment claim. *See Boxill v. O'Grady*, 935 F.3d 510, 520-21 (6th Cir. 2019) (racist and sexist comments made over several years could form the basis for such a claim); *Grays v. Mayorkas*, No. 21-10526, 2021 WL 3207047, at *11 (E.D. Mich. 2021) (Cleland, J.) (explicitly racial comments, requirements to get permission

6

to use bathroom, and offensive, aggressive touching over several years sufficient to state a claim). He alleges only discrete acts—*i.e.*, poor reviews, a reprimand, new responsibilities, denial of assistance, an accusation about his timecard, and termination.

Only Mustafa's termination falls within the 300-day period preceding his EEOC charge and can form the basis for his discrimination claim. But the Court will consider "prior acts as background evidence" in support of his timely claim. *Morgan*, 536 U.S. at 113.

### B. Discriminatory Termination

Ford next contends that Mustafa has failed to state a claim for discrimination because he has not plausibly pleaded that he was terminated because of a protected characteristic. ECF No. 10, PageID.44. Mustafa insists that he has established a prima facie case of discrimination, highlighting his allegations that he received glowing performance reviews until he arrived in Kansas City, that he was reprimanded for wearing shorts while his white co-workers were not, that he was accused of falsifying his timecard after complaining about discrimination, and that his supervisors denied his requests for assistance when even upper management could see he had too much work. ECF No. 13, PageID.75-79.

Under the *McDonnell Douglas* framework, a plaintiff can establish a prima facie case for discrimination by alleging that: (1) he is a member of a protected class; (2) he is otherwise qualified; (3) he experienced an

7

adverse employment action; and (4) other similarly situated individuals were not so treated. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). But since the *McDonnell Douglas* framework is an evidentiary standard rather than a pleading requirement, plaintiffs need not establish a prima facie case at the complaint stage. *Charlton-Perkins v. Univ. of Cincinnati*, 35 F.4th 1053, 1060 (6th Cir. 2022) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002)). Mustafa needed only to "plead sufficient facts from which [the Court] could plausibly conclude that" he was fired because of a protected characteristic. *Id.*; *Keys v. Humana*, 684 F.3d 605, 610 (6th Cir. 2012).

Mustafa has not met this burden. His only allegation of disparate treatment is that he was reprimanded in July 2020 for wearing shorts, while his white co-workers were not. As noted above, any claim based on that reprimand is untimely, and the Court questions whether the reprimand was "adverse" within the meaning of Title VII. *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014) (adverse action is "significant change in employment status"). Even if the Court considers that reprimand as background evidence, it was an isolated incident that occurred a year before Mustafa was fired and does not support an inference that he was fired because of his race, origin, or religion.

Nor do Mustafa's other allegations regarding his workload, the reassignment of the engineer sent to assist him, or the accusation that he falsified his timecard—when combined with the reprimand—plausibly

8

suggest that a protected characteristic was a motivating factor for his firing. Mustafa concedes in his briefing that these "actions on their own would not be actionable." ECF No. 13, PageID.72-73. Even when considered together, they do not nudge his claim that he was terminated because of a protected characteristic from possible to plausible. *See Mohamed v. Stratosphere Quality*, No. 22-3345, 2022 WL 19826868, at \*2 (6th Cir. Dec. 20, 2022) (specific allegations of disparate treatment could suffice to state a claim); *Han v. Univ. of Dayton*, 541 F. App'x 622, 627 (6th Cir. 2013) (dismissal of complaint was appropriate where plaintiff "offered no specifics" about similarly-situated individuals); *Edwards v. City of Cincinnati*, No. 22-503, 2023 WL 145898, at \*3 (S.D. Ohio Jan. 10, 2023) (allegations that plaintiff was disciplined, assigned new inspection territory, constructively discharged, and replaced by white employee did not adequately allege adverse action motivated by race).

Mustafa correctly notes that direct evidence of discrimination is rare. *Masaebi v. Arby's Corp.*, 852 F. App'x 903, 909 (6th Cir. 2021). But he still needs facts suggesting that a protected characteristic motivated his termination. Apart from the shorts incident, there are no factual allegations that similarly-situated employees received more favorable treatment. It is readily apparent that Mustafa is a member of protected classes and that he believes he experienced adverse actions because of his race, national origin, or religion. But mere belief is not enough.

9

## C. Retaliation

Ford also argues that Mustafa has failed to adequately allege a prima facie case for retaliation. ECF No. 10, PageID.48. A plaintiff may establish a prima facie case for retaliation by showing: (1) he engaged in a protected activity under Title VII; (2) his employer was aware of that activity; (3) he suffered an adverse employment action; and (4) there was a causal connection between the adverse action and the protected activity. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013).

Again, at this stage it is not necessary for Mustafa to carry the burden of establishing a prima facie case. *Bar v. Kalitta Charters II, LLC*, No. 21-1739, 2022 WL 3042844, at *5 (6th Cir. 2022). He needs only to allege facts plausibly suggesting "that he was fired in retaliation for opposing what he reasonably believed to be a discriminatory practice." *Cox v. Shelby State Cmty. Coll.*, 48 F. App'x 500, 506 (6th Cir. 2002).

There is no dispute that Mustafa's human-resources complaint was a protected activity. The disagreement centers over whether Mustafa has plausibly alleged that it was causally connected to his termination. As Mustafa observes, close temporal proximity between a protected activity and an adverse employment action—like his termination—may allow an inference of causation under certain circumstances. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525-26 (6th Cir. 2008).

But the timeline Mustafa has presented is insufficient on its own to support an inference of retaliation based on temporal proximity. He was

not fired until July 22, 2021—some ten months after he filed his human resources complaint. *See Kean v. IT-Works, Inc.*, 466 F. App'x 468, 471 (6th Cir. 2012) ("a one-month gap between a complaint and allegedly retaliatory conduct could not, without more, support a causal inference"). To be sure, Mustafa was on medical leave for seven of those months. But the Court sees no reason to discount those months from its consideration, and Mustafa does not suggest any.

What other facts does Mustafa allege in support of his retaliation claim? First, he points to his allegation that Richei accused him of falsifying his timecard almost immediately after he lodged the complaint. The timing of the accusation is certainly suspicious, but Mustafa has not alleged that Richei was a decision-maker in his termination. Second, Mustafa says that he received another poor performance review in the months before he was fired. But Mustafa says that he consistently received negative reviews while at the Kansas City plant, so the negative review does not aid him in establishing retaliatory animus.

Accordingly, Mustafa has failed to plausibly allege a causal connection between his human-resources complaint and his termination.

### D. Leave to Amend

Mustafa requests the Court grant leave to amend if the Court finds his complaint insufficient to state a claim. Under Federal Rule of Civil Procedure 15(a)(2), the Court must freely grant leave to amend "when justice so requires."

Mustafa has not suggested any additional factual allegations in his brief. But the Court sees a possibility that he may be able to patch up the deficiencies in his complaint. And since discovery has not yet begun, the Court cannot discern any prejudice to Ford or any other reason to deny leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## IV. CONCLUSION

For the reasons set forth above, Ford's Motion to Dismiss (ECF No. 10) is **GRANTED**. The Court **GRANTS** Plaintiff leave to amend his complaint within 30 days of the date of the Order.

**IT IS SO ORDERED**, this 7th day of September, 2023.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge